<u>NOT FOR PUBLICATION</u>                                    (Docket No. 30)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____  :
CONCETTA NORCROSS, et al.,            :
                                      :
                    Plaintiffs,       :        Civil No. 04-2536 (RBK)
                                      :
           v.                         :        **OPINION**
                                      :
TOWN OF HAMMONTON, et al.,            :
                                      :
                                      :
                    Defendants.       :
_____  :

**KUGLER**, United States District Judge:

        Before the Court is a motion by Defendants Town of

Hammonton, Officer James Pinto, Officer Baglivo, and Corporal

Mazzeo (collectively "Defendants") for summary judgment against

Plaintiffs Concetta Norcross and Geraldine Singletary

("Plaintiffs"). For the reasons expressed below, the Court grants

Defendants' motion.

**I. Background**

        On June 29, 2002, Plaintiff Concetta Norcross

("Norcross") saw a woman driving a truck that belonged to

Norcross's husband, Harry Norcross. Norcross followed the truck,

and phoned her sister, Plaintiff Geraldine Singletary

("Singletary"), to tell Singletary of the situation.  At the

1

Dockets.Justia.com

time, Norcross already suspected that her husband was engaged in an extramarital affair.

Norcross followed the truck into the parking lot of the Wal-Mart in Hammonton, New Jersey.  Norcross again phoned Singletary, this time asking Singletary to meet her at the Wal-Mart.  The driver of the truck parked the truck, and Norcross parked directly behind the truck to prevent the truck from leaving.  Norcross exited her vehicle, and yelled to the woman in the truck, "What are you doing with my husband's fucking truck?" (Norcross Dep. at 24, 27.) According to Norcross's deposition, the driver in the truck, later identified as Debbie Keenan ("Keenan"), responded "You are divorced." (Id. at 27.) Norcross allegedly informed Kennan that Norcross and Harry Norcross were still married. (Id.) The two women engaged in a heated discussion. (Id.; Keenan Dep. at 26.) Throughout the altercation, Kennan's three children were in the backseat of the truck. (Keenan Dep. at 26.)

During the exchange between Keenan and Norcross, Keenan told her children that she planned to go into the store to buy sodas. (Norcross Dep. at 27.) As Keenan exited the vehicle, Norcross entered the truck and yelled at the children, "I just want you to know that your mother is fucking my husband." (Norcross Dep. at 27.) Keenan grabbed Norcross in an effort to remove her from the truck, scratching Norcross's arm. (Id. at 27-

2

28.) Neither Singletary nor Hammonton Police Officers were present at the time. (Id. at 28.)  After Keenan pulled Norcross from the truck, Norcross told Keenan that they needed to call the police because Norcross planned to press charges for assault. (Id.)

Singletary arrived at the parking lot shortly after the alleged assault. (Id.) Singletary asked a Wal-Mart employee collecting shopping carts in the parking lot to call the police. (Id.)

At some point during the confrontation, someone phoned Norcross's husband, Harry Norcross, and summoned him to the Wal-Mart parking lot.  (Keenan Dep. at 30-31.) Harry Norcross arrived at the Wal-Mart parking lot after the alleged assault but before the Hammonton Police responded. (Id. at 30.)

The first officer to respond to the incident was Officer Pinto, who arrived in a marked car. Norcross alleges that she attempted to relay her version of events to Officer Pinto, but she alleges Officer Pinto told Norcross to remain by her vehicle while he spoke to Keenan.[1] At this point, Officer Baglivo and Corporal Mazzeo arrived, each in their own marked vehicles.

---

[1]    Singletary alleges that Harry Norcross, an employee of the Camden County Prosecutor's Office, flashed his "badge" to Officer Pinto.  Singletary alleges that after Officer Pinto saw Harry Norcross's credentials, he was not interested in hearing Norcross's version of what transpired in the parking lot.
Harry Norcross denies ever flashing his badge to the officers on the scene.

Norcross admits that she continued to pursue Officer Pinto as he attempted to walk away from her, even though he continued to warn Norcross to "Get back.  I'm going to arrest you." After Norcross repeatedly disobeyed the Officer's orders, Officer Pinto placed Norcross under arrest and attempted to handcuff her.  Norcross alleges that Officer Pinto cuffed her left wrist first, and at that time, she states that she held her cell phone in her right hand.  Officer Pinto allegedly told Norcross to release her cell phone, which Norcross refused to do because, by her own admission, she "didn't want to be handcuffed."  After Norcross refused to obey Officer Pinto's instructions, the parties agree that Officer Pinto grabbed her right index finger and bent it back to force Norcross to drop her cell phone. Then Officer Pinto attempted to put Norcross in the police car.  Norcross alleges that she does not "feel" that she resisted getting into the car, but that she continued to iterate her side of the story-namely, that she was the victim of assault and that she was one who called the police. Norcross alleges that Officer Pinto "pushed down on [her] head and . . . picked up [her] legs and threw" her into the back of the patrol car. Norcross complained that her handcuffs were too tight, and Corporal Mazzeo loosened them.

As the police officers arrested Norcross, Singletary spoke to Pinto and told him they arrested the "wrong person."

Officer Pinto allegedly told Singletary to "get back" repeatedly, and Singletary failed to comply. At that point, Officer Pinto requested that Officer Baglivo arrest Singletary. At some point during this scenario, Singletary stated "Oh yeah, you're a big, bad cop."

While in the police car, Norcross complained of chest pains. Officer Pinto transported her to the hospital,[2] where the staff performed diagnostic tests. Norcross then went to the police station. The Hammonton Police charged both Norcross and Singletary with disorderly conduct and resisting arrest, however the charges were later dismissed.

Plaintiffs filed a complaint with the Hammonton Police Internal Affairs Division. Captain Jones, who directed the investigation, concluded there was no actionable offense. Norcross, Singletary and Singletary's spouse, Robert Singletary, filed a complaint in United States District Court for the District of New Jersey against Defendants. Norcross alleges that as a result of the events that took place on June 29, 2002, she suffered chest pains, nerve damage to her left thumb, contusions, and sprains and strains of her shoulders and neck. Norcross alleges that these injuries require ongoing medical treatment and may be permanent. Likewise, Singletary alleges that as a result

---

[2]    Corporal Mazzeo testified at his deposition that he summoned an ambulance to the scene, which transported Norcross to the hospital.

of the Defendants' actions on June 29, 2002, she suffered a
variety of injuries, including contusions, sprains, and numbness
in her hands.  Specifically, Plaintiffs assert the following
claims: (1) Officers Pinto and Baglivo, while acting under the
color of state law, violated Norcross and Singletary's right to
be free from the use of excessive force and unlawful seizure
under the First and Fourteenth Amendments of the United States
Constitution, and the New Jersey Constitution; (2) Town of
Hammonton adopted and maintained a recognized and accepted
policy, custom and/or practice of systematically failing to
properly train, supervise and discipline members of the Town of
Hammonton police force regarding the use of force and unlawful
arrests; (3) Officers Pinto and Baglivo and Corporal Mazzeo
conspired to harm Norcross and Singletary and deny them their
constitutional rights; (4) Officers Pinto and Baglivo and
Corporal Mazzeo failed to intervene while their fellow officers
used excessive force against and falsely arrested Norcross and
Singletary; (5) Officers Pinto and Baglivo and Corporal Mazzeo
intentionally caused the false arrest, false imprisonment, and
malicious prosecution of Norcross and Singletary; (6) Officers
Pinto and Baglivo and Corporal Mazzeo assaulted and battered
Norcross and Singletary; and (7) Officers Pinto and Baglivo and
Corporal Mazzeo deprived Robert Singletary of the society,

6

companionship and consortium of his wife.[3]

Defendants moved for summary judgment as to all but one of the remaining claims on September 29, 2006.  Plaintiffs oppose the motion.

## II.  Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under the applicable law.  Id.  In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in a light most favorable to the nonmoving party.  Id. at 250.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3]    The Court granted partial summary judgment to Defendants as to Robert Singletary's claim on July 13, 2006.

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact. Fed. R. Civ. P. 56(e).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.  Analysis**

        A.  Qualified Immunity

Defendants move for summary judgment as to the claims that Officers Pinto, Baglivo and Corporal Mazzeo violated Plaintiffs' federal constitutional rights by using excessive

8

force based on the doctrine of qualified immunity.

Qualified immunity protects police officers, like other governmental officials, from liability for civil damages where their conduct in performing a discretionary function "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity provides government officials room for mistakes in judgment and protects "all but the plainly incompetent or those who knowingly violate the law." Orsatti, 71 F.3d at 484. The rationale behind qualified immunity for police officers is to permit officers to perform their duties "without the fear of constantly defending themselves against insubstantial claims for damages" and to allow the public to recover damages where officers "unreasonably invade or violate individual rights under the Constitution and the laws of the United States." Id. at 483 (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)). With regard to claims of excessive force, the doctrine of qualified immunity recognizes that "police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving . . . about the amount of force that is necessary in a particular situation." Saucier v. Katz, 533 U.S. 194, 205 (2001) (internal quotations omitted).

Therefore, the "reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Id.  The United States Supreme Court cautioned lower courts from using the "20/20 vision of hindsight in favor of deference to the judgment of reasonable officers on the scene." Id.

There are several factors a court should consider that are "relevant to the merits of the constitutional excessive force claim," and which require "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[ed] an immediate threat to the safety of the officers or others, and whether [the suspect] . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight." Id. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back," the situation "justified [the use of] more force than in fact was needed." Id.

To establish a claim for excessive force as an unreasonable seizure, Plaintiffs must show that a seizure occurred and that the seizure was unreasonable. Estate of Smith v. Morasco, 318 F.3d 497, 515 (3d Cir. 2003).  Here, Defendants stipulate that a seizure occurred.  However, Defendants argue that the seizures were reasonable under the circumstances.

1.  Officer Pinto

When Officer Pinto arrived on the scene, Norcross

10

immediately approached him and explained what happened.  She
stated that she followed the truck into the parking lot and
blocked it, and that she entered the truck on the passenger side
and began to argue with Keenan, the driver.  In short, Plaintiff
Norcross immediately identified herself as the instigator.
According to both Norcross's and Officer Pinto's depositions,
Officer Pinto asked Plaintiff Norcross to remain where she was
while Officer Pinto spoke to Keenan.  Norcross herself admits
that she repeatedly failed to comply with Officer Pinto's
instructions, but rather followed him in an ongoing effort to
explain her side of the story.  Officer Pinto states that he
asked Plaintiff Norcross to "get back" at least three times, and
at no point did she comply.  Rather, she continued to use vulgar
language and approach Officer Pinto from behind as he walked
away.  Even after he warned Norcross that he would arrest her for
disorderly conduct if she continued to behave in this manner,
Norcross failed to comply.

　　　　After Officer Pinto arrested Norcross, she remained
defiant.  Norcross refused to drop her cell phone when Officer
Pinto ordered her to, because, according to Norcross, she "did
not want to be handcuffed."  In addition, Norcross refused to
voluntarily enter the police car when ordered to do so.

　　　　Norcross's combative and noncompliant behavior in the
Wal-Mart parking lot warranted Officer Pinto's actions.  There is

no dispute that Norcross failed to follow Officer Pinto's instructions.  There is no dispute that Norcross was confrontational, and was the instigator in the first instance. Viewing the totality of the circumstances, Officer Pinto's conclusion that Norcross acted in a volatile, erratic, aggressive and emotional manner was reasonable, and his subsequent decision to arrest Norcross for disorderly conduct did not violate Norcross's Fourth and Fourteenth Amendment rights.  In addition, Officer Pinto acted reasonably when he forced Norcross to drop her cell phone once she failed to follow his instructions to surrender the phone on her own accord.  Likewise, her failure to voluntarily enter the police vehicle made his action to force her into the car reasonable.  Even viewing the facts in a light most favorable to Norcross, there is no question that she failed to comply with his repeated instructions. To protect himself, the other officers, Keenan, and the members of the public nearby, Officer Pinto acted in a reasonable manner when he arrested Norcross and restrained her in his vehicle.

The Court also finds that Officer Pinto acted reasonably with regard to Singletary. After Officer Pinto arrested Norcross, Singletary approached him, telling him that he "arrested the wrong person."  Officer Pinto commanded Singletary to step back, and she refused to comply. Given that Officer Pinto arrested Singletary's sister only moments before, and that

Singletary similarly refused to comply with the instructions from the officers on the scene, it was reasonable for Officer Pinto to order Officer Baglivo to place handcuffs on Singletary, who remained defiant even after Officer Baglivo arrested her, taunting the police by calling the officers "big bad cops."  The situation with Singletary was as emotional, volatile and intense as it had been with Norcross, as detailed above.

This Court concludes that Officer Pinto did not violate Norcross's or Singletary's Fourth and Fourteenth Amendment rights to be free of unreasonable seizure because he acted reasonably under the circumstances.  Therefore, Officer Pinto is entitled to qualified immunity, and the Court grants Defendants' motion for summary judgment as to this issue.

### 2.    *Officer Baglivo*

In light of this Court's determination regarding Officer Pinto's alleged violation of Plaintiffs' rights under the Federal Constitution, the Court determines that Officer Baglivo also did not violate Plaintiff's federal constitutional rights when he arrested Singletary.[4]  Officer Baglivo faced the same heated and tense circumstances as Officer Pinto in the parking lot.  Viewing the totality of the circumstances, the Court concludes that Officer Baglivo acted reasonably under the

---

[4]     The record fails to establish that Officer Baglivo had any contact with Norcross.

13

circumstances. Therefore, the Court finds that Officer Baglivo is entitled to qualified immunity, and grants Defendants' motion for summary judgment as to Plaintiffs' federal constitutional claims against Officer Baglivo.[5]

B.    Claims Against Town of Hammonton

In the complaint, Plaintiffs allege that the Town of Hammonton had a policy or custom of "condoning and/or acquiescing the illegal and unconstitutional arrests of the citizens of New Jersey and the use of unreasonable force during the course of seizures and/or arrests of citizens of New Jersey"; "failing to properly train, supervise, and/or discipline members of the Town of Hammonton Police force"; and "fail[ing] to discipline or otherwise properly supervise its officers." As a result, Plaintiffs seek relief from the Town of Hammton, pursuant to 42 U.S.C. § 1983. Monell v. New York City Dept. of Social Serv., 436 U.S. 658 (1978). However, a Monell claim requires a deprivation of a federal constitutional right. As discussed in section III.A., supra, this Court grants Defendants' motion for summary judgment on the portions of the complaint that allege violation of federal law as a result of Plaintiffs' arrests on

---

[5]    Plaintiffs also alleges that Officers Pinto and Baglivo violated their state constitutional right to be free from unreasonable seizures, pursuant to Article 1, Paragraph 7 of the New Jersey Constitution. Defendants do not move for summary judgment as to this claim. Therefore, the Court will not address it at this time.

June 29, 2002.  Because there is no longer a claim of a federal constitutional violation, this Court grants summary judgment to the Town of Hammonton on all Monell claims.

        C.   Conspiracy

In Count Three of the complaint, Plaintiffs allege that Officers Pinto and Baglivo, along with Corporal Mazzeo, conspired to violate Plaintiffs' federal constitutional rights.

To state a claim of conspiracy under 42 U.S.C. § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Green v. City of Paterson, 971 F. Supp. 891, 908 (D.N.J. 1987) (citing Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993).

Plaintiffs fail to offer any factual basis to support their assertion that Defendants agreed to deprive Plaintiffs of their federal constitutional rights.  Regardless, as discussed above, Defendants' arrest of Norcross and Singletary was not unconstitutional under the Federal Constitution, as the officers acted reasonably under the circumstances.  To state a cause of action of conspiracy pursuant to 42 U.S.C. § 1983, a constitutional violation must occur. See Green, 971 F. Supp. at 909 (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995); Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989) (stating that for a conspiracy to be actionable under

§ 1983, plaintiff must show both agreement and actual deprivation of constitutional right)). Because the Court holds that there is no federal constitutional violation, there can be no conspiracy claim under 42 U.S.C. § 1983. The Court grants Defendants summary judgment as to this count.

     D.   <u>Bystander Liability</u>

     In Count IV of the complaint, Plaintiffs allege "bystander liability" against all Defendants.  Because the complaint later describes an alleged "failure to intervene" on the part of the individual Defendants pursuant to 42 U.S.C. § 1983, the Court construes this count as alleging that Defendants failed to intervene to prevent the violation of Plaintiffs' federal constitutional rights.

     Courts in this circuit hold that "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." <u>Smith v. Mensinger</u>, 293 F.3d 650 (3d Cir. 2002). "If a police officer . . . fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." <u>Id.</u> (citing <u>Byrd v. Clark</u>, 783 F.2d 1002, 1007 (11th Cir. 1986)).

     Given this standard, the Court holds that Defendants cannot be liable for "bystander liability," or failure to

16

intervene, if there is no constitutional violation in the first instance.  Because the Court previously determined that Defendants acted reasonably in arresting Plaintiffs, the Court determines that Defendants are not liable for failure to intervene.  Therefore, the Court grants summary judgment to Defendants as to this count.

### E.   False Arrest, Malicious Prosecution, False Imprisonment

In count five of the complaint, Plaintiffs allege that Defendants deprived Plaintiffs of their federal constitutional rights to be free from false arrest, false imprisonment, and malicious prosecution, pursuant to 42 U.S.C. § 1983.

#### 1.   *False Arrest and False Imprisonment*

An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)).

The United States Supreme Court defined "probable cause" as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) . . . committed . . .

17

an offense.'" <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). While "[p]robable cause to arrest requires more than mere suspicion[,] . . . it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." <u>Orsatti</u>, 71 F.3d at 482-83. The Third Circuit held that courts should apply a "common sense approach," based on the totality of the circumstances, to determine whether there was probable cause to arrest. <u>Paff v. Kaltenbach</u>, 204 F.3d 425, 436 (3d Cir. 2000). When determining whether an officer had probable cause for an arrest, a court reviewing the "totality of the circumstances" must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003) (quoting <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1996)).

Because this Court previously determined that, in the context of the totality of the circumstances, Defendants acted reasonably in arresting Plaintiffs, the Court finds that Defendants had the requisite probable cause to prevent Plaintiffs from claiming false arrest, and therefore, false imprisonment under 42 U.S.C. § 1983 because there was no deprivation of a federal constitutional right. As a result, the Court grants Defendants' motion for summary judgment as to this portion of

count five of the complaint.

    *2.  Malicious Prosecution*

        In count five of the complaint, Plaintiffs also allege that Defendants deprived Plaintiffs of their federal constitutional right to be "free from . . . malicious prosecution" pursuant to 42 U.S.C. § 1983.

        An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). "To prove malicious prosecution under [§] 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). "To prevail on [a malicious prosecution] claim, [a plaintiff] must show that the officers lacked probable cause to arrest." Wright v. City of Philadelphia, 409 F.3d 595, 603-04 (3d Cir. 2005) Therefore, when determining whether to grant Defendants' motion for summary judgment as to the claim for malicious

19

prosecution under 42 U.S.C. § 1983, the determination again rests on whether Defendants had probable cause to arrest Norcross and Singletary.

As stated in section III.E.1., supra, this Court holds that given the totality of the circumstances in the Wal-Mart parking lot on June 29, 2002, Defendants acted reasonably and had probable cause to arrest Plaintiffs for disorderly conduct. Because the Defendants had probable cause to effect the arrest, Plaintiffs' claim for malicious prosecution under 42 U.S.C. § 1983 fails.  The Court therefore grants Defendants' motion for summary judgment as to the remainder of count five of the complaint.

F.   Assault and Battery

In count six[6] of the complaint, Plaintiffs allege that Defendants "wrongfully and unlawfully assaulted and battered" Plaintiffs during the series of events that unfolded in the Wal-Mart parking lot on June 29, 2002.  Plaintiffs assert these tort claims under state common law.

New Jersey's Tort Claims Act states that "[n]o action shall be brought against a public entity or public employee" unless the claimant files a notice of claim with the entity within ninety days of the accrual of the claim or else be

---

[6]     The Court notes that the complaint mistakenly labels this as count five.

"forever barred" from asserting that cause of action. N.J.S.A. §§ 59:8-3, -8; see also Moon v. Warren Haven Nursing Home, 867 A.2d 1174, 1176 (N.J. 2005). Defendants move for summary judgment as to the state tort claims due to Plaintiffs' failure to comply with the requirements of the Tort Claims Act.

        The record reflects that, to date, Plaintiffs failed to serve the Town of Hammonton, as well as the individual Defendants, with notice of these tort claims.  Moreover, when Defendants moved for summary judgment as to this issue with this defense, Plaintiffs failed to even address the omission in their brief in opposition to summary judgment.  Therefore, the Court grants Defendants' motion for summary judgment as to count six of the complaint because Plaintiffs failed to comply with the requirement of the New Jersey Tort Claims Act.

## IV.  Conclusion

        For the reasons stated above, the Court grants Defendants' motion for summary judgment in its entirety.  The only claim remaining is Plaintiffs' allegation in count one of their complaint that Officers Pinto and Baglivo's actions constituted excessive force under the New Jersey Constitution.


Dated: 7/17/2007                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge