NOT FOR PUBLICATION (Docket No. 43)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
CONCETTA NORCROSS, et al.,               :
                                         :
         Plaintiffs,                     :   Civil No. 04-2536 (RBK)
                                         :
    v.                                   :   **OPINION**
                                         :
TOWN OF HAMMONTON, et al.,               :
                                         :
         Defendants.                     :
_____ :

**KUGLER**, United States District Judge:

Before the Court is a motion by Defendants James Pinto and Officer Baglivo (collectively "Defendants") for summary judgment against Plaintiffs Concetta Norcross and Geraldine Singletary ("Plaintiffs"). For the reasons expressed below, the Court grants Defendants' motion.

**I.     BACKGROUND**

The Court has set forth the facts of this case in the prior Opinion of July 17, 2007 but will summarize the factual background again. Norcross v. Town of Hammonton, No. 04-2536, 2007 WL 2085366 (D.N.J. July 17, 2007). On June 29, 2002, Plaintiff Concetta Norcross ("Norcross") saw a woman driving a truck that belonged to Norcross's husband, Harry Norcross. Norcross followed the truck and phoned her sister, Plaintiff Geraldine Singletary ("Singletary"). Norcross already suspected her husband of engaging in an extramarital affair.

1

Norcross followed the truck into the parking lot of the Wal-Mart in Hammonton, New Jersey. Norcross again phoned Singletary, this time asking Singletary to meet her at the Wal-Mart. The driver of the truck parked the truck, and Norcross parked directly behind the truck to prevent the truck from leaving. Norcross exited her vehicle, and yelled to the woman in the truck, "What are you doing with my husband's fucking truck?" (Norcross Dep. at 24, 27.) According to Norcross's deposition, the driver in the truck, later identified as Debbie Keenan ("Keenan"), responded, "You are divorced." (Id. at 27.) Norcross allegedly informed Keenan that Norcross and Harry Norcross were still married. (Id.) The two women engaged in a heated discussion. (Id.; Keenan Dep. at 26.) Throughout the altercation, Keenan's three children were in the backseat of the truck. (Keenan Dep. at 26.)

During the exchange between Keenan and Norcross, Keenan told her children that she planned to go into the store to buy sodas. (Norcross Dep. at 27.) As Keenan exited the vehicle, Norcross entered the truck and yelled at the children, "I just want you to know that your mother is fucking my husband." (Norcross Dep. at 27.) Keenan grabbed Norcross in an effort to remove her from the truck, scratching Norcross's arm. (Id. at 27-28.) Neither Singletary nor Hammonton Police Officers were present at the time. (Id. at 28.) After Keenan pulled Norcross from the truck, Norcross told Keenan that they needed to call the police because Norcross planned to press charges for assault. (Id.)

Singletary arrived at the parking lot shortly after the alleged assault. (Id.) Singletary asked a Wal-Mart employee collecting shopping carts in the parking lot to call the police. (Id.)

At some point during the confrontation, someone phoned Norcross's husband, Harry Norcross, and summoned him to the Wal-Mart parking lot. (Keenan Dep. at 30-31.) Harry

2

Norcross arrived at the Wal-Mart parking lot after the alleged assault but before the Hammonton Police responded.  (Id. at 30.)

The first officer to respond to the incident was Officer Pinto, who arrived in a marked car. Norcross alleges that she attempted to relay her version of events to Officer Pinto, but she alleges Officer Pinto told Norcross to remain by her vehicle while he spoke to Keenan.[1]  At this point, Officer Baglivo and Corporal Mazzeo arrived, each in their own marked vehicles.

Norcross admits that she continued to pursue Officer Pinto as he attempted to walk away from her, even though he continued to warn Norcross, "Get back.  I'm going to arrest you." After Norcross repeatedly disobeyed the Officer's orders, Officer Pinto placed Norcross under arrest and attempted to handcuff her.  Norcross alleges that Officer Pinto cuffed her left wrist first while she held her cell phone in her right hand.  Officer Pinto allegedly told Norcross to release her cell phone, which Norcross refused to do because, by her own admission, she "didn't want to be handcuffed."  After Norcross refused to obey Officer Pinto's instructions, the parties agree that Officer Pinto grabbed her right index finger and bent it back to force Norcross to drop her cell phone.  Then Officer Pinto attempted to put Norcross in the police car.  Norcross alleges that she does not "feel" that she resisted getting into the car, but that she continued to iterate her side of the story–namely, that she was the victim of assault and that she was one who called the police.  Norcross alleges that Officer Pinto "pushed down on [her] head and . . . picked up [her] legs and threw" her into the back of the patrol car.  Norcross complained that her handcuffs were

---

[1] Singletary alleges that Harry Norcross, an employee of the Camden County Prosecutor's Office, flashed his "badge" to Officer Pinto.  Singletary alleges that after Officer Pinto saw Harry Norcross's credentials, he was not interested in hearing Norcross's version of what transpired in the parking lot.
   Harry Norcross denies ever flashing his badge to the officers on the scene.

too tight, and Corporal Mazzeo loosened them.

As the police officers arrested Norcross, Singletary spoke to Pinto and told him they arrested the "wrong person." Officer Pinto allegedly told Singletary to "get back" repeatedly, and Singletary failed to comply. At that point, Officer Pinto requested that Officer Baglivo arrest Singletary. At some point during this scenario, Singletary stated, "Oh yeah, you're a big, bad cop."

While in the police car, Norcross complained of chest pains. Officer Pinto transported her to the hospital,[2] where the staff performed diagnostic tests. Norcross then went to the police station. The Hammonton Police charged both Norcross and Singletary with disorderly conduct and resisting arrest; however the charges were later dismissed.

Norcross, Singletary and Singletary's spouse, Robert Singletary, filed a complaint in United States District Court for the District of New Jersey against Defendants. Norcross alleges that as a result of the events that took place on June 29, 2002, she suffered chest pains, nerve damage to her left thumb, contusions, and sprains and strains of her shoulders and neck. Norcross alleges that these injuries require ongoing medical treatment and may be permanent. Likewise, Singletary alleges that as a result of the Defendants' actions on June 29, 2002, she suffered a variety of injuries, including contusions, sprains, and numbness in her hands. The Court granted summary judgment against Plaintiff Robert Singletary's claim on July 13, 2006. Norcross v. Town of Hammonton, No. 04-2536, 2006 WL 1995021 (D.N.J. Jul 13, 2006). In the Opinion of July 17, 2007, this Court granted summary judgment to Defendants on all but one of

---

[2] Corporal Mazzeo testified at his deposition that he summoned an ambulance to the scene, which transported Norcross to the hospital.

Plaintiffs' claims. Norcross, 2007 WL 2085366. Summary judgment was granted on all the claims against the Town of Hammmonton and Corporal Mazzeo. In the sole remaining claim, Plaintiffs allege that the actions of Officers Pinto and Baglivo constituted excessive force under the New Jersey Constitution and violated their state constitutional right to be free from unreasonable seizures. See Norcross, 2007 WL 2085366, *5 n.5. Defendants Pinto and Baglivo moved for summary judgment on the remaining claim on August 13, 2007, and Plaintiffs oppose this motion.

**II. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under the applicable law. Id. In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Id. at 250.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact. Fed. R. Civ. P. 56(e).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Analysis

The Court has already granted summary judgment to Defendants on Plaintiffs' claim that the actions of Officers Pinto and Baglivo violated Plaintiffs' rights under the United States Constitution to be free from unreasonable seizures. See Norcross, 2007 WL 2085366, *4-5. Defendants now argue that the standard for evaluating the reasonableness of a seizure under the New Jersey Constitution is the same as that under the United States Constitution and ask the Court to grant summary judgment based on the earlier determination that Plaintiffs' Fourth Amendment rights were not violated. (Defs.' Mot. Summ. J. 7.) Plaintiffs argue that the New Jersey Constitution offers citizens greater protection from unreasonable seizures than does the United States Constitution and urge the Court to deny the motion. (Pls.' Opp'n 8.)

The Court agrees with Plaintiffs that Article 1, Paragraph 7 of the New Jersey Constitution provides greater protection from unreasonable searches and seizures than the Fourth Amendment in some contexts. See State v. Cooke, 163 N.J. 657, 666-67 (N.J. 2000) ("We note

6

that on more than one occasion this Court has interpreted our State Constitution as affording its citizens greater protections than those afforded by its federal counterpart."). However, these contexts have been specifically delineated by the New Jersey Supreme Court. For example, the New Jersey Supreme Court has ruled that the New Jersey State Constitution provides citizens with greater protections against searches of their telephone records and their garbage and does not provide a good faith exception to the exclusionary rule. See State v. Hunt, 450 A.2d 952, 955 (N.J. 1982) (phone records); State v. Hempele, 576 A.2d 793, 800 (N.J. 1990) (garbage); State v. Novembrino, 519 A.2d 820, 849-50 (N.J. 1987) (no good-faith exception to exclusionary rule). In other contexts, the protections provided by the United States Constitution are coextensive with the protections provided by the New Jersey State Constitution. See State v. Maples, 346 N.J. Super. 408, 415-16 (N.J. Super. Ct. App. Div. 2002) (finding limitations on parole officer's right to search home of parolee same under state and federal law).

The New Jersey Supreme Court has held that under Article I, paragraph 7 of the New Jersey Constitution, a search or an arrest by the police must be reasonable, measured in objective terms by examining the totality of the circumstances. State v. Ravotto, 777 A.2d 301, 306 (N.J. 2001). The New Jersey Supreme Court does not appear to have spoken on whether excessive force is a context where state law provides greater protection than does federal law. See Ravotto, 777 A.2d at 316 (noting that there are "instances" where state law affords greater protection than the Fourth Amendment, but not including unreasonable force claims as one such instance). This Court sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution. Cf. Maples, 346 N.J. Super. at 416 (finding "no

reason to conclude that the New Jersey Constitution requires any greater" protection than does the United States Constitution and applying the federal standard); State v. Stever, 527 A.2d 408, 415 (N.J. 1987) (discussing the need for "sound policy reasons" for extending protections provided by state law beyond protections provided by federal law). Therefore, the Court evaluates Plaintiffs' claims in light of the standard established by Graham v. Connor, 490 U.S. 386 (1989).

Graham requires police officers' actions to be objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation. Id. at 397. This Court has already ruled that given the totality of the circumstances in the Wal-Mart parking lot on June 29, 2002, the actions of Officers Pinto and Baglivo were objectively reasonable. See Norcross, 2007 WL 2085366, *4-5.

With regard to Defendant Pinto, this Court specifically held that

> Officer Pinto acted reasonably when he forced Norcross to drop her cell phone once she failed to follow his instructions to surrender the phone on her own accord. Likewise, her failure to voluntarily enter the police vehicle made his action to force her into the car reasonable. Even viewing the facts in a light most favorable to Norcross, there is no question that she failed to comply with his repeated instructions. To protect himself, the other officers, Keenan, and the members of the public nearby, Officer Pinto acted in a reasonable manner when he arrested Norcross and restrained her in his vehicle.

Id. at 4. This Court also held that

> [g]iven that Officer Pinto arrested Singletary's sister only moments before, and that Singletary similarly refused to comply with the instructions from the officers on the scene, it was reasonable for Officer Pinto to order Officer Baglivo to place handcuffs on Singletary, who remained defiant even after Officer Baglivo arrested her, taunting the police by calling the officers "big bad cops." The situation with Singletary was as emotional, volatile and intense as it had been with Norcross, as detailed above.

Id. at 5.  With regard to Defendant Baglivo, this Court noted that Defendant Baglivo had no contact with Norcross.  Additionally, because he "faced the same heated and tense circumstances as Officer Pinto in the parking lot," this Court held that Defendant Baglivo's actions in arresting Plaintiff Singletary were reasonable.  Id.

The Court now holds that because the Defendants acted reasonably in light of the circumstances, they are entitled to summary judgment on Plaintiffs' claims of excessive force under state law.

## IV.  Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment as to the remaining claims that Officers Pinto and Baglivo's actions constituted excessive force under the New Jersey Constitution.  The entirety of Plaintiffs' complaint is therefore disposed of as a matter of law.


Dated: 2-05-2008              /s/ Robert B. Kugler
                              ROBERT B. KUGLER
                              United States District Judge